Filed 1/7/14  P. v. Cialini CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056630 |
| v. | (Super.Ct.No. SWF029540) |
| GIANNI CIALINI, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed.

Law Offices of Ronald A. Ziff, Ronald A. Ziff and Abby Bessner Klein for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Gianni Cialini, guilty of committing a lewd or lascivious act upon a child under the age of 14 years old.  (Pen. Code, § 288, subd. (a).)  The trial court granted defendant formal probation for a period of 36 months, with the requirement defendant register as a sexual offender.  (Pen. Code, § 290.)  Defendant contends (1) the trial court erred by excluding evidence, and (2) the trial court's evidentiary rulings violated his constitutional rights of confrontation and due process. We affirm the judgment.[1]

## FACTUAL AND PROCEDURAL HISTORY

A.  MOLESTATION

The female victim was born in March 2004.  The victim's mother (Mother) worked with defendant, and Mother referred to defendant as the victim's godfather.  On August 16, 2009, when the victim was five years old, Mother went to a concert with her husband (Husband) in Los Angeles and left the victim and the victim's one-year-old sister in the care of defendant and defendant's girlfriend.  At approximately 1:00 a.m. on August 17, Mother went to defendant's house in San Jacinto to pick up her children.

Mother asked defendant, "How well did [the] children do?"  Defendant "said there was an incident."  Defendant explained the victim accused him of "touching her when they were trying to put her to bed."  Defendant's girlfriend confirmed that she heard the victim "hollering" while defendant was trying to put the victim to bed.

---

[1] Defendant has filed a petition for writ of habeas corpus in connection with this appeal.  We dispose of the petition via a separate order.

The following morning, on the way to school, Mother told the victim about defendant informing her of the victim's allegations. Mother told the victim such accusations were "serious stuff" and "[p]eople get in big trouble for this." The victim responded, "I'm not lying, Mommy."

During dinner that night, Husband questioned the victim. The victim said she was sitting on defendant's lap while they were playing on the computer and defendant "put his hand down her pants." The victim demonstrated how defendant pulled the victim's pants away from her body. Mother and Husband called the police.

On August 19, 2009, a forensic (RCAT) interview was conducted with the victim. During the interview, the victim said she was sitting on defendant's lap at a desk, playing on the computer, when he opened her pants. Defendant placed his finger in the victim's vagina, spun his finger around, and moved it "up and down." Defendant removed his finger from the victim's vagina, placed it "close to his nose," "sniff[ed] it," and then placed his finger in his mouth. At trial, the victim recalled defendant touching her genitals and smelling his finger afterward.

B.     PRETRIAL MOTION

Defendant filed a motion in limine seeking to admit evidence of the victim's prior false molestation accusation against her stepgrandfather and to cross-examine witnesses about the prior false accusation. Specifically, the defense had evidence reflecting Mother told two of her friends that the victim had told Mother her stepgrandfather inserted his fingers in the victim's vagina, but Mother did not believe the victim. The defense asserted that when Mother reported the offense involving

3

defendant, she said the victim described a sexual situation that she could not have fabricated "'because she is just a little girl,'" who would not know about such issues. The defense asserted Mother lied when making this statement because Mother knew the victim had previously made a false molestation accusation against her stepgrandfather, thus reflecting the victim had the knowledge to fabricate the allegations against defendant.

The trial attorneys and trial judge had "extensive discussions" off the record, in chambers, concerning the motions in limine. When the trial attorneys and judge returned to the record, it was to conduct an Evidence Code section 402[2] hearing. Mother testified at the hearing. Mother said the victim had never previously discussed sexual topics so she was shocked to hear the victim's allegations against defendant.

Mother explained that the victim's grandmother and stepgrandfather, Tony Carter (Carter), had told Mother that when they were babysitting the victim, Carter went into the restroom to wipe the victim's buttocks after a bowel movement and the victim said, "Oh, Papa stuck his finger in me," likely referring to her anus. Carter "overreacted," denied placing a finger in the victim's anus, and said "he would never do that." Mother never heard the victim's accusation from the victim, she only heard it from Carter and Carter's wife. Mother "dismissed" the accusation against Carter.

The trial attorneys and trial judge returned to chambers to discuss the issue off the record. When the attorneys and judge returned to the courtroom, the trial court

---

[2] All subsequent statutory references will be to the Evidence Code unless otherwise indicated.

explained to defendant that the evidence of the false accusation against Carter was inadmissible hearsay, since Mother did not have firsthand knowledge of the accusation—she only heard about the accusation from Carter and Carter's wife. The trial court informed defendant there was "no admissible evidence of any such prior complaint, [so] your lawyer would have to have Mr. [Carter] or Mrs. [Carter], whoever actually heard the victim say these things, come to court."

The trial court told defendant that if he or his trial counsel requested a continuance in order to locate Carter, then the trial court would grant the request because it appeared to the court that Mr. and Mrs. Carter "are important witnesses in this case," although the court conceded they had not yet been interviewed. After defendant consulted with his trial attorney, defendant elected not to request a continuance, instead, defendant went forward with the trial.

The following day, the trial court summarized the issue. The trial court explained the parties were making tactical decisions to not call Mr. and Mrs. Carter as witnesses. The court explained it was excluding the evidence about the Carter accusation due to it being hearsay—the court did not make a section 352 or relevance ruling. In regard to the defense witnesses who would testify they did not believe the accusations against defendant due to Mother informing them about the prior accusations against Carter, the court ruled both sides would be allowed to have witnesses "state their general character opinion regarding the truth and veracity of any witness, but that the testimony will be limited to general opinions of the truth and veracity, and neither side will be allowed to go into alleged specific instances of dishonesty by any witness."

5

In regard to impeachment, the trial court said, "Furthermore, once a witness has been asked to voice an opinion about some other witness's truth and veracity generally, then should either side have evidence that the witness giving the character opinion—evidence that that witness has expressed inconsistent statements in the past on the question of character for truth and veracity, that those prior inconsistent statements may be brought in to not only impeach the character opinion given in court, but also, like any other prior inconsistent statements, may be brought in . . . as truth of the witness's true opinion about the character of the other witness.

"But because we're only going to deal with the opinions generally, not opinions specifically about this particular case and truth or accuracy of this particular allegation, neither shall either side be able to bring in prior inconsistent statements about witnesses' opinions about this particular case. Those are off limits. [¶] I think that summarizes what we've decided so far."

## C.     MOTION FOR NEW TRIAL

In (1) the argument section of defendant's motion for new trial, and (2) defendant's trial counsel's declaration in support of the motion for new trial, information was presented reflecting an off-the-record discussion took place about perjury evidence. Defendant's trial counsel, in his declaration, wrote: "The Court was also apprised that Maria Ruffin would testify that [Mother] was her friend, and that [Mother] visited Ms. Ruffin one day, unannounced—and contrary to [Mother's] statement that they only knew each other through a cancer walk program—and that they had discussed the allegations against [defendant]. Ms. Ruffin reported that [Mother]

6

told her that she did not believe the allegations, as [the victim] had made false accusations in the past. When asked by Ms. Ruffin why she did not come forward and tell the these things [*sic*], she reported that [Husband] would not allow her to do so." Defendant's trial counsel further declared, "[T]he court ruled that Ms. Ruffin's testimony was hearsay, and would not allow it." The trial court denied defendant's motion for a new trial.

## DISCUSSION

### A. ADMISSIBILITY OF EVIDENCE

Defendant contends the trial court erred by excluding various items of evidence, such as (1) the testimony of Mother's two friends who allegedly heard Mother say she did not believe the victim to be honest due to the prior allegations against Carter; (2) the cross-examination of Mother related to her prior inconsistent statement concerning the victim's dishonesty; and (3) evidence of Mother's plans to perjure herself. Defendant asserts the evidence and cross-examination were admissible for a variety of reasons.

We review the trial court's evidentiary rulings for an abuse of discretion. (*People v. Her* (2013) 216 Cal.App.4th 977, 981.) We address each of defendant's sub-arguments in turn.

#### 1. *INCONSISTENT STATEMENTS*

First, defendant contends the testimony of Mother's friends and cross-examination of Mother should have been permitted as prior inconsistent statements. (§ 1235.) Specifically, defendant asserts Mother testified at trial that the victim was honest. Therefore, Mother's statements to her two friends about not believing the

7

victim due to the victim falsely accusing Carter would have been relevant as being inconsistent with Mother's testimony about the victim's honesty.

"Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." (§ 1235.) Thus, "[t]he 'fundamental requirement' of section 1235, is that the statement in fact be *inconsistent* with the witness's trial testimony. [Citation.]" (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219.)

During the direct examination of Mother, the following exchange took place:

"[Prosecutor]: So it's fair to say, then, that she's a seven-year-old girl and lies sometimes. Correct?

"[Mother]: Correct.

"[Prosecutor]: And she tells the truth sometimes. Correct?

"[Mother]: Correct."

Given that Mother testified the victim sometimes lied, the trial court could reasonably conclude the evidence about the victim's dishonesty would not be admissible as an inconsistent statement because the evidence was *consistent* with Mother's testimony. In other words, the testimony about the victim's dishonesty matched Mother's testimony, so the trial court could reasonably find the inconsistent statement law to be inapplicable. Accordingly, the court did not abuse its discretion.

Second, defendant asserts Mother's friend would have testified that Mother said she could not testify truthfully, thus impeaching the totality of Mother's testimony. From the court's ruling, there is nothing indicating Mother's friend could not have

8

testified about hearing Mother say she planned to perjure herself. The court's ruling excluded the Carter allegations, but nothing else, as that was the focus of the motion in limine. In other words, it does not appear the court's ruling excluded the defense from presenting this testimony.

Defendant's motion for new trial reflects an off-the-record discussion and ruling took place regarding the perjury evidence. The only information we have about the perjury discussion and ruling is derived from (1) defendant's motion for new trial, and (2) defendant's trial counsel's declaration in support of the motion for new trial. This perjury information creates a problematic record because it comes from defendant's trial counsel's recollection of a conversation and ruling that occurred off the record. This is essentially an ex parte settled statement. (Cal. Rules of Court, rule 8.837 [setting forth the procedure for statements on appeal].) This court cannot conclude the trial court erred and reverse a judgment based solely upon defendant's trial counsel's recollection of the trial court's ruling. (Cal. Rules of Court, rule 8.837.) We need a transcript of the ruling or a statement on appeal. Accordingly, we must affirm on this issue because the ruling in the record does not appear to have excluded the perjury evidence.

2.    *BASIS OF CREDIBILITY*

Defendant contends the trial court erred by excluding evidence of Mother telling a friend she would perjure herself because the evidence was admissible as proof of Mother's truthfulness.

A "jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony . . .

9

including[:] [¶] . . . [¶] (e) His character for honesty or veracity or their opposites[;] [¶] (f) The existence or nonexistence of a bias, interest, or other motive[;] [¶] . . . [¶] (j) His attitude toward the action in which he testifies or toward the giving of testimony[; and] [¶] (k) His admission of untruthfulness." (Evid. Code, § 780.)

Defendant asserts Mother's friend would have testified that Mother said she planned to perjure herself because Husband insisted she do so. The trial court's ruling reflects: "[W]e're only going to deal with the opinions generally, not opinions specifically about this particular case and truth or accuracy of this particular allegation, neither shall either side be able to bring in prior inconsistent statements about witnesses' opinions about this particular case. Those are off limits. [¶] I think that summarizes what we've decided so far."

Testimony about Mother's plans to perjure herself would not fall within the categories of (1) truth or accuracy of the allegations, or (2) prior inconsistent statements about witnesses' opinions. Rather, information about perjury would be a basic fact about Mother's testimony; it would bear no relation to the allegations or a prior opinion. As a result, it does not appear that the trial court excluded the testimony about Mother's alleged perjury. Thus, we conclude the trial court did not err.[3]

---

[3] As set forth *ante,* it appears from defendant's motion for new trial that a specific perjury ruling occurred off the record, but do not have a settled statement concerning that ruling. Accordingly, we address the perjury issue with the record before us—a record that does not include the off-the-record perjury ruling.

### 3. *VICTIM CHARACTER EVIDENCE*

Defendant contends the evidence concerning the victim's prior false allegations against Carter were admissible as evidence of the victim's character.

Section 1103 allows evidence about the victim's character to be admitted in certain circumstances, such as when it is offered by the defendant to prove the victim acted in conformity with the alleged character trait. Defendant's argument concerning section 1103 is problematic because the section does not appear to create an exception to the hearsay rule. Rather, it is an exception to the character evidence rule in section 1101. Since the evidence concerning the victim's prior allegations against Carter was excluded because it involved multiple levels of hearsay, defendant's argument concerning the character evidence exception is not persuasive because it is off-point.

### 4. *STATE OF MIND*

Defendant contends his testimony concerning his knowledge of the victim's false allegations against Carter should have been admitted as evidence of his state of mind.

During defendant's direct examination, he was questioned about a conversation he had with his girlfriend, Deidre, on the night the molestation occurred. The following exchange took place during the examination:

"[Defense Attorney]: So I'm assuming that when [the victim] got put to bed, you and Deidre discussed this.

"[Defendant]: Very, very briefly.

"[Defense Attorney]: What did you guys talk about?

11

"[Defendant]: Uh, we basically said that we needed to tell her parents. I mean, that was—that was the discussion. Very important for us to do that.

"[Defense Attorney]: Okay. How were you feeling at the time?

"[Defendant]: We were concerned. We were a little concerned, but, uh—we knew she had made these kinds of allegations about other people before, so we knew that it was important to just tell her parents.

"[Prosecutor]: Objection. Hearsay. Move to strike. Lack of foundation.

"The Court: The answer is stricken. Lack of personal knowledge.

"[Defense Attorney]: You hadn't personally heard her say anything about anybody before?

"[Defendant]: No, not me personally.

"[Defense Attorney]: Okay. So—but in your mind—at least in your mind at the time, it was important that you let her parents know?

"[Defendant]: Yes. We cared very very much about [the victim]."

The trial court sustained the prosecutor's objection because defendant lacked personal knowledge concerning the prior false allegations. Section 702 provides a witness may only testify about matters of which he has personal knowledge. The "state of mind" rule, upon which defendant is relying, is a hearsay exception. (§ 1250.) This evidence was excluded due to a lack of personal knowledge—it was not excluded on hearsay grounds. Thus, defendant's hearsay argument is not persuasive because it is off-point.

Defendant did not have personal knowledge of the hearsay statement because he did not observe the victim make the hearsay statement. Thus, it was not a hearsay problem that required the objection be sustained—it was defendant's lack of personal knowledge concerning the hearsay statement. (See *People v. Valencia* (2006) 146 Cal.App.4th 92, 103 ["'Courts require that declarants of a hearsay statement have firsthand knowledge before the hearsay statement is admissible, however. [Citations.] The party offering a statement has the burden of proving personal knowledge.' [Citation.]".) In sum, defendant's argument about the state of mind exception is not persuasive.

B.    CONSTITUTIONAL RIGHTS

Defendant contends the trial court violated his federal constitutional rights of due process and confrontation by excluding evidence about Mother's plans to perjure herself and Mother's prior statements about the victim's habit of being dishonest. We disagree.

Defendant relies on the following law: "Erroneous evidentiary rulings can rise to the level of a due process violation. (*Montana v. Egelhoff* [(1996)] 518 U.S. 37, 53[.])" As set forth *ante*, the trial court did not err when issuing its evidentiary rulings. As a result, we are not persuaded by defendant's argument that his due process rights were violated by the alleged evidentiary errors.

Further, we note the trial court offered defendant an opportunity to continue the trial so as to secure the testimony of Carter and/or Carter's wife—the people who supposedly had personal knowledge of the alleged false allegations—but defendant declined the opportunity. Thus, to the extent defendant is asserting he was denied an

opportunity to present exculpatory evidence, such an assertion is also not persuasive, since defendant rejected the offer to continue the trial.

In regard to the right of confrontation, defendant asserts he should have been able to cross-examine Mother about her prior inconsistent statement concerning the victim's dishonesty. We apply the de novo standard of review, since defendant's assertions involve his constitutional right of confrontation. (*People v. Seijas* (2005) 36 Cal.4th 291, 304.) As set forth *ante*, Mother testified that the victim was sometimes dishonest. Thus, there was not a prior inconsistent statement, as the statements were consistent. As a result, defendant was not denied an opportunity to cross-examine Mother about a prior inconsistent statement.

Defendant also contends he was denied an opportunity to cross-examine Mother about her plan to perjure herself. As set forth *ante*, there is nothing in the trial court's on-the-record ruling reflecting that evidence about perjury was excluded. Thus, we are not persuaded the trial court denied defendant an opportunity to cross-examine Mother about this issue.

Defendant contends the trial court's cumulative evidentiary errors violated his right of due process, right of confrontation, and right to present a full defense. We have not found an error on the part of the trial court. As a result, defendant's cumulative error argument is unpersuasive. (*In re Reno* (2012) 55 Cal.4th 428, 483 [there cannot logically be cumulative error when there are no errors to cumulate].)

14

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

McKINSTER

Acting P. J.

RICHLI

J.